# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| DEBORAH J. CARTER, | : |
| Claimant, | : |
| v. | : CASE NO. 7:07-CV-148 (WLS) |
| | : Social Security Appeal |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Respondent. | : |

## REPORT AND RECOMMENDATION

The Social Security Commissioner, by adoption of the Administrative Law Judge's determination, denied Claimant's application for social security disability benefits, finding that she was not disabled within the meaning of the Social Security Act and Regulations. Claimant contends that the Commissioner's decision was in error, and she seeks review under the relevant provisions of 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c). All administrative remedies have been exhausted.

## LEGAL STANDARDS

The court's review of the Commissioner's decision is limited to a determination of whether it is supported by substantial evidence and whether the correct legal standards were applied. *Walker v. Bowen*, 826 F.2d 996 (11th Cir. 1987). Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). The court's role in reviewing claims brought under the Social

Security Act is a narrow one. The court may not decide facts, reweigh evidence, nor substitute its judgment for that of the Commissioner.[1] *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). It must, however, decide if the Commissioner applied the proper standards in reaching a decision. *Harrell v. Harris*, 610 F.2d 355, 359 (5th Cir. 1980). The court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings. *Bloodsworth v. Heckler*, 703 F.2d at 1239. However, even if the evidence preponderates against the Commissioner's decision, it must be affirmed if substantial evidence supports it. *Id.* The initial burden of establishing disability is on the claimant. *Kirkland v. Weinberger*, 480 F.2d 46 (5th Cir. 1973). The claimant's burden is a heavy one and is so stringent that it has been described as bordering on the unrealistic. *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

A claimant seeking Social Security disability benefits must demonstrate that he suffers from an impairment that prevents him from engaging in any substantial gainful activity for a twelve-month period. 42 U.S.C. § 423(d)(1). In addition to meeting the requirements of these statutes, in order to be eligible for disability payments, a claimant must meet the requirements of the Commissioner's regulations pursuant to the authority provided by the Social Security Act. 20 C.F.R. § 404.1 et seq.

Under the regulations, the Commissioner determines if a claimant is disabled by a

---

[1] Credibility determinations are left to the Commissioner and not to the courts. *Carnes v. Sullivan*, 936 F.2d 1215, 1219 (11th Cir. 1991). It is also up to the Commissioner and not to the courts to resolve conflicts in the evidence. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). See also *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986).

five-step procedure. 20 C.F.R. § 404.1520, Appendix 1, Part 404. First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Next, the Commissioner determines whether the claimant's impairment(s) meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations. Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. Finally, the Commissioner determines whether the claimant's residual functional capacity, age, education, and past work experience prevent the performance of any other work. In arriving at a decision, the Commissioner must consider the combined effect of all the alleged impairments, without regard to whether each, if considered separately, would be disabling. *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984). The Commissioner's failure to apply correct legal standards to the evidence is grounds for reversal. *Id.*

## ISSUES

I. **Whether the ALJ failed to properly evaluate the Claimant's residual functional capacity?**

II. **Whether the ALJ improperly determined that there had been medical improvement in Claimant's impairments?**

## Administrative Proceedings

Claimant filed for disability benefits on January 26, 2004. (R-8, p. 1). Claimant's application was denied initially and on reconsideration. Claimant then filed a request for a hearing before an administrative law judge (ALJ), wherein a hearing was ultimately held on July 26, 2006. (T-563-586). Subsequent to the hearing, the ALJ found that the Claimant was disabled from January 2, 2003, through December 5, 2005 (the closed period), in a decision dated November 21, 2006. (T-16-28). The ALJ further found that there had been medical improvement in her condition, and thus determined that as of December 5, 2005 (the current period), Claimant was no longer disabled. *Id.* Claimant then requested a review of the ALJ's findings by the Appeals Council and submitted new evidence for review. Thereafter, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.

## Statement of Facts and Evidence

Claimant alleges in her disability application that she is disabled due to discongenic and degenerative back disorders, severe headaches, fibromyalgia, irritable bowel syndrome, asthma, and affective and mood disorders. (R-8, p. 1). After examining the medical records, the ALJ determined that Claimant had fibromyalgia, depression, anxiety, reactive airway disease, status post anterior cervical diskectomy and fusion, status post left knee arthroscopic surgery, right shoulder impingement syndrome, and irritable bowel syndrome, impairments that were severe within the meaning of the Regulations, but not severe enough to meet any of the relevant Listings. (T-23). Thereafter, the ALJ found that from January 2, 2003, to

4

December 5, 2005, Claimant had the residual functional capacity to perform a range of light exertional work and that Claimant would not be able to return to her past relevant work. (T-22). After consulting a Vocational Expert, the ALJ found that there were no jobs available which Claimant could perform during the closed period because she would likely miss more than four days per month due to her impairments. (T-24). As such, the ALJ determined that Claimant was disabled from January 2, 2003, to December 5, 2005. *Id*. However, the ALJ further determined that as of December 5, 2005, Claimant had seen medical improvement in her condition which negated the need for the frequent absences from work. Therefore, the ALJ found that Claimant's impairments, either alone or in combination, no longer met any of the relevant Listings. As such, the ALJ determined that Claimant could perform a range of light work and, thus, determined that she was no longer disabled. (T-25).

## DISCUSSION

**I.    Did the ALJ fail to properly evaluate Claimant's residual functional capacity?**

In her first enumeration of error, Claimant contends that the ALJ erred in failing to properly evaluate her residual functional capacity. (R-8, p. 13). Specifically, Claimant argues that the ALJ improperly evaluated her mental limitations, exertional capacity, gastrointestinal disease and fibromyalgia, and further, failed to properly evaluate the combined effect of all of her physical and mental impairments on her ability to work. *Id.* at 13-17.

### A.    Mental Limitations

Claimant first contends that the ALJ failed to analyze medical evidence relating to her

5

depression and personality disorder. (R-8, p. 13). Claimant argues that the ALJ ignored evidence of her depression, disregarded evidence of a personality disorder, and disregarded evidence that she would not be able to interact with co-workers and would be slow to complete tasks. *Id.* at 13-14.

As to her claim that the ALJ failed to analyze a possible personality disorder, the record reveals that Claimant did not list "personality disorder" as a disabling impairment when she applied for disability benefits with the Social Security Administration. The Claimant's application for benefits states that the impairments that affect her ability to work were fibromyalgia, mitral valve prolapse, degenerative disc disease, arthritis, chronic thyroid, irritable bowel syndrome, breathing problems, severe headaches and bouts of depression. (T-123). Furthermore, at the hearing on her claim, the only reference to any type of mental impairments occurred when the ALJ asked the Claimant if she was being treated for depression, wherein she responded in the affirmative. (T- 573).

The Claimant argues that "her therapist- and the consultant- diagnosed personality disorder with borderline traits in addition to major depressive disorder." (R-8, p. 13). A review of the cited references reveals that the consulting psychologist, Dr. Long, diagnosed her with a "Mixed Personality Pattern-Avoidant/Histrionic Features" (T-326), and the therapists who counseled Claimant at Covenant Counseling Services listed "personality disorder" as assessments. The transcript of the hearing, however, fails to demonstrate any mention of a personality disorder by the Claimant or her attorney.

Merely noting the existence of an impairment does not make it a condition the

Commissioner must analyze. As the Regulations state, the burden of proving that she is disabled is on the Claimant. *See,* 20 C.F.R. 416.912. That means that "[I]n an action seeking disability benefits, the burden is upon the claimant to demonstrate existence of a disability as defined by the Social Security Act. *Brady v. Heckler,* 724, F.2d 914, 918 (11th Cir. 1984); *citing Fortenberry v. Harris,* 612 F.2d 947 (5th Cir.1980). It is, therefore, not the responsibility of the ALJ to analyze each and every impairment listed by the claimant in her medical records to determine if that impairment causes or contributes to a claimant's inability to work. It is the sole responsibility of the claimant to do so. To require that the ALJ address every impairment mentioned in a claimant's medical records to determine its severity would remove the burden from the Claimant and place it squarely on the shoulders of the Commissioner.

With regard to her claims that the ALJ ignored evidence of her depression and did not properly evaluate her ability to interact with co-workers or her slowness to complete tasks, the ALJ's findings attest to his determination that her depression and anxiety were severe. He therefore found that she had functional limitations resulting from her mental impairments and his residual functional capacity reflects the limitations accordingly. Specifically, the ALJ found that due to her mental impairments, "she is limited to only simple 1- to 3- step work that does not involve dealing with the general public other than co-workers." Those exertional limitations encompass the Claimant's slowness to complete tasks and her need to avoid public contact as the ALJ found those limitations to exist. As such, no error is found as to the ALJ's determination of Claimant's mental impairments.

**B. Exertional Capacity**

Claimant next contends that the ALJ erred in determining that she could perform light work where he failed to properly evaluate the opinions of her physicians regarding her physical residual functional capacity. (R-8, p. 15). Specifically, as to the current period only, she argues that the ALJ's reliance on Dr. Burkus's opinion that she could return to light work was improper where he "ignored Dr. Norwood's subsequent restrictions– although Dr. Burkus referred Carter to Dr. Norwood– and he improperly assumed that Dr. Burkus's definition of light work is the equivalent of the agency's definition of light work." *Id.* Claimant further alleges that the ALJ never assessed her work-related abilities function-by-function as required before finding that she could perform light work. *Id.*

The findings in this case reflect an analysis of Claimant's ability to perform light work completed by the ALJ for the closed period, but an ultimate finding that she would miss more than four days per month, required a finding of disability. (T-22). As to the current period, the ALJ determined that Claimant's residual functional capacity was essentially the same, but because she would no longer have frequent missed days, the ALJ found that she was no longer disabled. Although the Claimant contends in her Reply brief that the Commissioner could not and did not deny that the ALJ "improperly interpreted 'light duty' as used by Dr. Burkus as if he was using the regulatory definition of 'light work'" and merely attempts to "muddy the waters with incomprehensible ramblings", the court finds that the Commissioner did, in fact, correctly note that there was a function-by function analysis done regarding what Claimant "could do" functionally and, further, that the determinations made by the ALJ

8

establish that he used the regulatory definition of "light work" in making his residual functional capacity findings. Thus, no error is found as to this claim.

Claimant further argues in this claim of error that the ALJ erred when he found her to have "right shoulder impingement syndrome with right arm weakness" but failed to include any limitations in her ability to push or pull. *Id.* at 16. In 20 C.F.R. § 404.1567 and 416.967, the Regulations define light work as follows:

> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, **or when it involves sitting most of the time with some pushing and pulling of arm or leg controls**. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(emphasis added). Because the ALJ found Claimant was limited to light work with the noted limitations, it follows that he found that she could perform some pushing and pulling of arm controls if the job required that action. Therefore, Claimant's contention that the ALJ failed to include any limitations in her ability to push or pull is without merit.

C. **Gastrointestinal Disease and Fibromyalgia**

Next, Claimant alleges that the ALJ erred in determining that she had irritable bowel syndrome (IBS) and fibromyalgia but then failing to find any functional limitations resulting therefrom. (R-8, p. 16). The record reveals that the ALJ found that her irritable bowel

9

syndrome and her fibromyalgia were severe. The ALJ, however, found that these impairments, although severe, did not meet, medically equal or functionally equal any of the relevant listings. (T-22). As the Commissioner noted in his brief, the Claimant, who asserts that she has had gastrointestinal problems since 1993 and fibromyalgia since 1999, was able to work at jobs with medium and heavy exertional requirements during these time periods. (R-9, p. 14).

Step Two of the sequential analysis stated above requires that the Commissioner determine whether a claimant has an impairment which prevents the performance of basic work activities. 20 C.F.R. § 404.1520, Appendix 1, Part 404. In the instant case, the ALJ looked at the medical evidence of record in making his decision regarding the severity of her IBS and fibromyalgia. (T-22). As is noted by the Claimant, pursuant to 20 C.F.R. § 404.1521(c), a severe impairment is one which substantially interferes with a person's ability to perform basic work activities. It does not, however, require that the ALJ find the Claimant disabled therefrom. The ALJ must follow the remaining steps of the sequential analysis to determine whether the functional limitations resulting from her severe impairments render her disabled within the meaning of the Regulations. Here, the ALJ did not find that either Claimant's IBS or fibromyalgia caused any further functional limitations, and the court finds no error in the ALJ's determinations.

### D. Combined Effect of Impairments

Claimant further alleges that the ALJ failed to properly evaluate the combined effect of all of her limitations on her ability to work. She claims that because the ALJ erred in

assessing her mental residual functional capacity, her exertional capacity, her IBS and fibromyalgia, he could not have validly determined how the limitations which resulted from these limitations, in combination with her other impairments, would prevent her from performing work-related activities. (R-8, p. 17).

A review of the record, along with the ALJ's findings, reveals that the ALJ correctly found that Claimant's assertion that the limitations resulting from her impairments was not established by the record. As has been stated, the burden is on Claimant to present evidence of any claimed impairment and/or any combination of impairments and the limitations which ensue from said impairments. Herein, Claimant failed to produce medical evidence that indicated that her mental residual functional capacity; exertional capacity; IBS and fibromyalgia, along with her other impairments, caused any limitations that precluded her from doing light level work, or that said conditions were not controlled by treatment, medication and/or surgery. Therefore, this court finds that Claimant did not present any evidence that these alleged impairments combined would render her disabled or increase the severity of other impairments so that they met or equaled a listing. Therefore, no error as to this claim is found.

**II.     Did the ALJ improperly determine that there had been medical improvement in Claimant's impairments?**

Lastly, Claimant contends that in determining, as of December 5, 2006, that she was no longer disabled due to medical improvement, the ALJ committed reversible error. Specifically, Claimant alleges that the ALJ's finding that she would no longer miss four or

11

more days a month on a sustained basis does not support a finding that her condition has improved such that she is no longer disabled. (R-8, p. 19-20).

Title 20, §§ 404.1594 and 416.994 of the Code of Federal Regulations state, in part, that: ". . . if you are entitled to disability benefits, your continued entitlement to such benefits must be reviewed periodically." 20 C.F.R. §§ 404.1594, 416.994. The regulations go on to state that "there are a number of factors we consider in deciding whether your disability continues." *Id.* Section 404.1594, which regulates disability insurance claims, and Section 416.994, which regulates supplemental security income claims, both list the factors which must be considered in order to effect a valid cessation of Claimant's benefits. First, the Commissioner must decide if there has been any medical improvement by the Claimant and, if so, whether the improvement is related to the Claimant's ability to work. *Id.* If the Claimant's disability has not medically improved, the Administration must consider the exceptions[2] to any medical improvement and whether one or more of these exceptions applies. *Id.* Where no medical improvement is found, the Claimant's benefits would continue. *Id.* Lastly, even if the Administration is able to show that there has either been medical improvement related to Claimant's ability to work or an exception which would apply, the ability to engage in substantial gainful activity must be shown before it can find that the Claimant is no longer eligible for benefits. *Id.*

It is the duty of the ALJ to determine if there has been medical improvement by

---

[2]Exceptions found in 20 C.F.R. § 404.1594(e) and § 416.994(b)(4).

comparing the Claimant's impairments at the time the disability benefits were awarded, or the Comparison Point Decision (CPD), and the present capabilities of the Claimant. *Id.* In the instant matter, with regard to the closed period, wherein he found that Claimant was disabled, the ALJ determined that because Claimant would miss four or more days a month, the Regulations dictated that she be declared disabled. (T-24). As to the current period, based on his review of the medical records, the ALJ found that Claimant would no longer have frequent absences from work due to her impairments, and, as such, determined that her medical improvement would allow her to engage in a specified range of light work. (T-25).

By comparing the medical records used to find the Claimant disabled during the closed period to the records and treatment notes of the Claimant in the current period, this Court finds that the ALJ properly made comparisons based on objective medical evidence in making his determination. It is further found that the ALJ's findings were based on substantial evidence.

## CONCLUSION

In reviewing the record, no evidence of error is found to substantiate the Claimant's contentions that the ALJ committed reversible error in this case. This Court finds that the ALJ properly evaluated the evidence of record and finds further that the decision of the ALJ is supported by substantial evidence. Moreover, the record fails to reveal evidence of the ALJ acting outside of his judicial role in determining the extent of the Claimant's disability.

**WHEREFORE**, it is the recommendation to the United States District Judge that

the decision of the defendant Commissioner of Social Security be **AFFIRMED**.  Pursuant to 28 U.S.C. § 636(b)(1), Claimant may serve and file written objections to this recommendation with the UNITED STATES DISTRICT JUDGE within ten (10) days after being served a copy of this recommendation.

**SO RECOMMENDED**, this the 7th Day of August, 2008.


S/ G. MALLON FAIRCLOTH
UNITED STATES MAGISTRATE JUDGE


eSw